UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TZUHSIN YANG a/k/a
CHRISTINE YANG,

        *Plaintiff*,

  v.

PEONY LIN, an individual, and
JANE DOE, an unknown individual,

        *Defendants.*

Civil Action No. 19-cv-8534

**Motion Return Date: May 20, 2019**

## DEFENDANT PEONY LIN'S MEMORANDUM OF LAW
## IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**MANDELBAUM SALSBURG, P.C.**
3 Becker Farm Road
Roseland, New Jersey 07068
Tel. (973) 736-4600

*Attorneys for Defendant Peony Lin*

*On the Brief*

Joel G. MacMull *Pending Admission Pro Hac Vice*
Arla D. Cahill

# **TABLE OF CONTENTS**

         **Page**

**TABLE OF CONTENTS** ............................................................................................. **i**

**TABLE OF AUTHORITIES** ................................................................................**ii-iii**

**PRELIMINARY STATEMENT** ................................................................................**1**

**STATEMENT OF FACTS**..........................................................................................**2**

**LEGAL ARGUMENT**.................................................................................................**2**

    **I.**    **THE APPLICABLE LEGAL STANDARD** ...........................................**2**

    **II.**   **THE COMPLAINT IS UNTIMELY AND MUST BE DISMISSED AS BEYOND THE APPLICABLE STATUTE OF LIMITATIONS PERIOD**........**3**

    **III.**  **THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION**........**5**

        **A.**  The Statements Attributed to Lin are not a Republication that Avoids the Statute of Limitations ..........................................................**6**

        **B.**  The Statements at Issue are not Defamatory .....................................**11**

**CONCLUSION** ........................................................................................................**16**

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ............................................................................................ 3

*Atkinson v. McLaughlin,* 462 F.Supp.2d 1038 (D.N.D. 2006) ...................................................... 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 3

*Berkery v. Gudknecht*, Case No. 17-cv-5574, 2018 WL 3549228 (E.D. Pa. July 24, 2018) .............. 3

*Beverly Hills Motoring, Inc. v. Morici*,
   Case No.  14-cv-756, 2015 WL 248352 (D.N.J. Jan. 20, 2015) ............................................ 13

*Churchhill v. State*, 378 N.J. Super. 471 (App. Div. 2005) ............................................................ 3

*Clayton v. City of Atl. City*, 722 F. Supp. 2d 581 (D.N.J. 2010) ..................................................... 3

*Feggans v. Billington,* 291 N.J. Super. 382 (App. Div. 1996) ...................................................... 11

*Firth v. State*, 98 N.Y.2d 365 (2002) ............................................................................................... 6

*Gulrajaney v. Petricha*, 381 N.J. Super. 241 (App. Div. 2005) .................................................... 13

*Hoesten v. Best*, 34 A.D.3d 143 (1st Dept. 2006) ......................................................................... 10

*Jorjani v. New Jersey Inst. of Tech*.,
  Case No. 18-cv-11693, 2019 WL 1125594 (D.N.J. Mar. 12, 2019) ............................................ 3

*Kotlikoff v. The Cmty. News*, 89 N.J. 62, 67 (1982) ..................................................................... 12

*Larue v. Brown*, 235 Ariz. 440  (Ariz. Ct. App. 2014) ................................................................... 7

*Lynch v. New Jersey Educ. Ass'n*, 161 N.J. 152 (1999) ................................................................ 11

*Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199 (D.N.J. 2011) ................................. 11

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir.2010) ............................................................................ 2

*McLaughlin v.  Rosanio*, 331 N.J. Super. 303 (App. Div. 2000) .................................................. 14

*Miele v. Rosenblum*, 254 N.J. Super. 8 (App. Div. 1991) .............................................................. 3

*Monroe v. Host Marriot Servs. Corp.*, 999 F. Supp. 599 (D.N.J. 1998) ........................................ 3

*Petro-Lubricant Testing Labs., Inc. v. Adelman*, 233 N.J. 236 (2018) .......................................... 6

*Romaine v. Kallinger*, 109 N.J. 282 (1988) ................................................................................. 11

*Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279 (3d Cir.2011) ......................................................... 2

*W.J.A. v. D.A.*, 416 N.J. Super. 380 (App. Div. 2010),
 *aff'd and remanded*, 210 N.J. 229 (2012) ................................................................................ 14

*Ward v. Zelikovsky*, 136 N.J. 516, 530 (1994) ............................................................................. 12

*Yeager v. Bowlin*, 693 F.3d 1076  (9th Cir. 2012) ......................................................................... 7

**Statutes**

N.J.S.A. § 2A:14-3.................................................................................................................. 3

**Other Authorities**

Restatement (Second) of Torts § 577A(3) (1977)...................................................................... 7

Restatement (Second) of Torts § 577A(4) ................................................................................ 3

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................................. 3

Defendant Peony Lin ("defendant" or "Lin"), by and through her undersigned counsel, respectfully submits this memorandum of law in support of her motion to dismiss the complaint ("Complaint") of plaintiff Tzuhsin Yang a/k/a Christine Yang ("plaintiff" or "Yang") in its entirety, pursuant to 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff alleges she has been defamed by the publication of no less than fifty-seven separate statements, fifty-five of which were allegedly posted on various Internet websites by Lin. However, as explained below, each of the dozens of statements for which Yang seeks recovery is barred for one reason or another.

Initially, the Complaint, filed on March 14, 2019, refers to a raft of statements that were first published beyond the applicable one-year statute of limitations period for defamation actions. Next, and relatedly, under black-letter New Jersey law (which controls here), New Jersey's reliance on the "single-publication rule" for Internet publications further contributes to the untimeliness of plaintiff's claims.

But if these two fatal defects were not enough, plaintiff's claims are also substantively deficient as a matter of law. Defamation law requires the offending statements, be not only false, but defamatory. Here, several of the allegedly defamatory statements – particularly when considered within their context, as defamation law requires – simply are not defamatory at all. "[R]umors she made up about [her] ex-husband's poor wife in Taiwanese circles" (Compl.[1] ¶18 at 7), "[she] gets so excited when she is making fun of her female friends in Taiwan and looking down her nose at how poor life style they are living …," (*id.*), and "she chooses which guy will

---

[1] All citations to the Complaint in this action dated March 14, 2019 (Dkt. No. 1) appear herein in as "Compl. at ___." Additionally, all quotations taken from the Complaint retain their original spelling and grammatical errors.

1

take her out on the most expensive dinner, hotel, or trip and then will post it on her F[ace]B[ook] page" (*id.,* ¶24 at 10), for example, are not allegations that lowers one's reputation in the community.

Accordingly, because Yang does not – and cannot as a matter of law – plead a plausible claim, the Court should dismiss the Complaint in its entirety.

## STATEMENT OF FACTS[2]

In addition to the Complaint filed in this action on March 14, 2019 (Dkt. No. 1), the Court is respectfully referred to the Declaration of Arla D. Cahill, Esq. dated April 23, 2019 and the exhibits annexed thereto ("Cahill Decl.") for a complete recitation of the facts and background relevant to the motion.[3]

## LEGAL ARGUMENT

**I.      THE APPLICABLE LEGAL STANDARD.**

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. While a court must accept as true all allegations in the complaint, a court is not required to accept sweeping legal conclusions cast in

---

[2] Solely for the purposes of this motion, Lin assumes the truth of the allegations in the Complaint. However, in the event that the Complaint were not to be dismissed in its entirety, Lin will deny that she made any statements to support Yang's claims or that there is any basis on which to impose liability against her.

[3] The Court can consider the documents annexed to the Cahill Decl. as they are referenced in the Complaint and relied upon by plaintiff in bringing her claims. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents ." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir.2010); *see also Ruddy v. U.S. Postal Serv.*, 455 F. App'x 279, 283 (3d Cir.2011) ( "The Magistrate Judge and District Court properly relied on Ruddy's EEOC file, which Ruddy referenced in his complaint and which is integral to his claim...."); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

2

the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Clayton v. City of Atl. City*, 722 F. Supp. 2d 581, 588 (D.N.J. 2010).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, pleaded states of mind must still be plausible to pass muster. *Jorjani v. New Jersey Inst. of Tech.*, Case No. 18-cv-11693, 2019 WL 1125594, at *3 (D.N.J. Mar. 12, 2019), citing *Berkery v. Gudknecht*, Case No. 17-cv-5574, 2018 WL 3549228, at *3 (E.D. Pa. July 24, 2018) (surveying various circuit court opinions).

## II. THE COMPLAINT IS UNTIMELY AND MUST BE DISMISSED AS BEYOND THE APPLICABLE STATUTE OF LIMITATIONS PERIOD.

New Jersey law provides that "every action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander." N.J.S.A. § 2A:14-3. New Jersey courts require this one-year statute of limitations to "be strictly construed." *Monroe v. Host Marriot Servs. Corp.*, 999 F. Supp. 599, 604 (D.N.J. 1998), citing *Miele v. Rosenblum*, 254 N.J. Super. 8, 12 (App. Div. 1991). Under the "single publication rule," a plaintiff in a defamation case is restricted to a single cause of action that arises when allegedly defamatory material is first published. *Churchhill v. State*, 378 N.J. Super. 471, 478, (App. Div. 2005); Restatement (Second) of Torts § 577A(4). New Jersey has adopted the single publication rule and applies it to Internet

3

publications. *Churchill*, 378 N.J. Super. at 478-79, 483. In doing so, New Jersey has made a deliberate public policy determination to "prevent[] the constant tolling of the statute of limitations in "favor[] of a short statute of limitations period for defamation," "thereby preventing potential harassment of defendants through a multiplicity of suits." *Id.* at 479.

Here, it is irrefutable that plaintiff did not file suit within one year from the allegedly defamatory publications. These include the following statements set forth in the Complaint that were first published on **September 14, 2016** and **January 3, 2018**, well before this action was commenced on **March 14, 2019**:

- "She has never worked a day of her life accept the oldest on [sic] in the book"

- "Money is her objective so when the first husband was about to call it quits, she got pregnant. Didn't matter, she was such a terrible mother she never got custody of her."

- "She married his old saggy ***** for the gifts and expensive trips he takes her on (which is what she tells younger men she has sex with). While married. or possibly still married to that guy, she is having sex with anything else that is married or single. Yes... she seduced even my husband."

- "He was introduced to her by her friend who... wanted some w ***** s to entertain her business meeting and called her in to join in... and she lied saying that she actually worked in Realestate."

- "So in order to do that, she chooses which guy will take her out on the most expensive dinner, hotel, or trip and then will post it on her FB page."

- "In the ***** e of a year, granted it was on and off because she had other men to have sex with and get gifts from, he spent close to $30,000 on her on $1,200 a/night hotels and $500 Michelin dinners."

- "Because this piece of work still keeps in contact with all the men she's slept with for "just incase" sex sessions and "just incase" financial needs if one money bags slips through her grasps. Which accounts for her on and off relationship with my husband. So any who, when I did the cross check of credit card bills, email histories, etc. against her FB posts. Basically the w ***** would get other dates and sex session inline while at hotels with other men and many times would go to the same hotels around the bay area with not only her husband, but the many different men she had been with."

4

- "He demoted her from his mansion to one of his crappier homes in Fremont cause he found out she was sleeping around, but decided he invested enough in her to keep her as his side w ***** . Anyways, he has a large box of condoms at the house for his open house sex visits, and the w ***** actually walks around with them in her purse to use with other men!!!"

- "(At least 6 [men] in just this past 9 months and that is without all her posts... as she will show and hide things all the time)."

- "She didn't care that she would destroy a relationship of over 20 yrs, much less 2 other kid's lives. SO SHE COULD HAVE FUN!"

- "she doesn't care if the men are married or old, as long as they pay for an expensive dinner and a nice hotel she'll gladly have sex with them because it is "FUN" and she can make her friend back home jealous."

- "She has had plastic surgery paid for by her men and every thing she owns down to her underwear... all paid for by having sex with men. She has no education and while dating one man will keep others on the tab for money."

- "[Plaintiff and her friends] hate each other, but will hang around each other in order to be "introduced" to other men. This is done by inviting them to business dinners, boy friend's or husbands friend get togethers, you get the picture."

- "Has been divorced at least 2 times, possibly 3, all to very old men. Was known to be the last husband's mistress and ruined a marriage of over 25 years. (While married in November of 2014 to last husband, she promptly continued to have sex with other single and married men)."

(*Compare* Compl. ¶¶ 18, 24 *with* Cahill Decl. Exs. A and B.)

Accordingly, because a review of the foregoing statements and their sources leads to the unmistakable conclusion that plaintiff's reliance on these statements as a basis for her claim is time barred, the Complaint's incorporation of these statements as a basis for her claim for defamation must be dismissed.

### III. THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION.

Even if plaintiff's claims were not untimely, the Complaint nonetheless fails to state a claim for defamation.

5

### A. The Statements Attributed to Lin are not a Republication that Avoids the Statute of Limitations.

Without expressly saying so, plaintiff attempts to engineer a way around the statute of limitations bar to save her otherwise defective defamation claim. In doing so, however, plaintiff demonstrates a fundamental misunderstanding of what constitutes republication.

The specific question of "when an internet article is sufficiently altered that it becomes a republication giving rise to a new cause of action" was recently addressed by the Supreme Court of New Jersey in *Petro-Lubricant Testing Labs., Inc. v. Adelman*, 233 N.J. 236, 253 (2018). After canvassing the legal landscape on this narrow issue (including the New York Court of Appeals seminal decision in *Firth v. State*, 98 N.Y.2d 365 (2002)), the New Jersey Supreme Court explained that "[w]hether a modified article is a republication will depend—in large part—on whether the altered article contains defamatory statements **not expressed** in the original article." *Petro-Lubricant*, 233 N.J. at 254. (emphasis added). "The[] cases illustrate that **not** every alteration to a website will restart the statute of limitations period on a defamation claim." *Id.* at 255 (emphasis added). Specifically, "[t]echnical website changes and alterations **unrelated to the substance of the allegedly defamatory content in the article do not constitute republication**." *Id.* (emphasis added).

The New Jersey Supreme Court, in turn, distilled the following legal principle in *Petro-Lubricant*:

> [A] republication occurs to an online publication if an author makes **a material and substantive change** to the original defamatory article. A material change is **one that relates to the defamatory content of the article at issue**. . . . **A substantive change is one that alters the meaning of the original defamatory article or is essentially a new defamatory statement incorporated into the original article**. . . . **A substantive change is not the mere reconfiguring of sentences or substitution of words that are not susceptible of conveying a new defamatory meaning to the article.**

*Id.* at 256 (emphases added). Other decisions, including those relied on in *Petro-Lubricant* have similarly held. *See, e.g., Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012) ("a statement on a website is not republished **unless the statement itself is substantively altered or added to**") (emphasis added); *Larue v. Brown*, 235 Ariz. 440, 446 (Ariz. Ct. App. 2014) ("And in *Firth*, the court recognized that although websites constantly change through the addition of new material the changes are not republications **unless they relate to and substantively modify the allegedly defamatory material**.") (emphasis added).

Based upon the foregoing, and a careful examination of the statements in the Complaint attributed to Lin, none of them constitute a republication as a matter of law. *See Petro-Lubricant*, 233 N.J. at 250 ("[W]hat constitutes a republication is an issue of law . . . .").

To begin with, the Complaint contains several duplicative statements, ostensibly from different websites, but which are identical in their content. (*Compare*, e.g., Compl. ¶18 at 5-6 *and* ¶26 at 11-12 *and* ¶20 at 8 *with* ¶22 at 9.) The later publication of these same statements on a different website, however, does amount to republication under New Jersey defamation law. Again, the New Jersey Appellate Division made this explicitly clear in *Churchill*, wherein it wrote:

> We affirm, and **hold that the Internet publication of a document, where that document remains unchanged after its original posting, is subject to a one-year statute of limitations that runs from the date of publication of the alleged libel or slander.** N.J.S.A. 2A:14–3. **New Jersey follows the single publication rule for mass publications under which a plaintiff alleging defamation has a single cause of action, which arises at the first publication of an alleged libel, regardless of the number of copies of the publication distributed or sold.** *Barres v. Holt, Rinehart & Winston, Inc.*, 131 N.J.Super. 371, 374–375, 379, 390, 330 A.2d 38 (Law Div.1974), *aff'd o.b.*, 141 N.J.Super. 563, 359 A.2d 501 (App. Div. 1976), *aff'd o.b.*, 74 N.J. 461, 378 A.2d 1148 (1977). *See also* Restatement (Second) of Torts § 577A(3) (1977) ("Any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication."). In adopting the single publication rule for mass publications, New Jersey rejected the traditional multiple publication rule under which each repetition of a libel, for example, each sale of a publication, would create a new cause of action. *Barres, supra*, 131 N.J.Super. at 374–375, 330 A.2d 38.

7

378 N.J. Super. at 478-79 (emphasis added).

Next, the posts Lin is alleged to have authored do not materially add to or alter the substance of the earlier published time-barred material. The following examples taken from the Complaint are illustrative:

| **Statements Published *Prior* to March 14, 2018** | **Statements Published *After* March 15, 2018** |
|---|---|
| "She has never worked a day of her life" and "she lied saying she actually worked in Realestate." (Cahill Decl., Ex. A on Sept. 14, 2016.) | "She has never held a job in her life, but she tells people she is a real estate agent." (*Compare* Compl. ¶18 at 5 *with* Cahill Decl., Ex. B, "Sophie" on Apr. 29, 2018.) |
| Multiple references to plaintiff being a "whore." (Cahill Decl., Ex. A on Sept. 14, 2016.) | "He pays her … to be his whore…"; (*Compare* Compl. ¶18 at 5 *with* Cahill Decl., Ex. B, "Sophie" on Apr. 29, 2018.)<br><br>"This whore is going around …"; (*Compare* Compl. ¶18 at 7 *with* Cahill Decl., Ex. C, "Tiffany C" on Jul. 24, 2018.)<br><br>"She is his back door hooker"; (*Compare* Compl. ¶18 at 6 *with* Cahill Decl., Ex. B, "Qxiao" on May 8, 2018.)<br><br>"[She is a] hooker"; (*Compare* Compl. ¶18 at 8 *with* Cahill Decl., Ex. B, "Dxioa" on Jun. 26, 2018.)<br><br>"She has no ability to survive in this world without sleeping with men – a cheap prostitute?" (*Compare* Compl. ¶18 at 5 *with* Cahill Decl., Ex. C, "Jen" on Jul. 30, 2018.) |

8

| | |
|---|---|
| "She was sleeping around…" (Cahill Decl., Ex. A on Sept. 14, 2016.) | "[S]he sleeps with [men who] pay for lavish vacations for her daughter, or to buy her daughter expensive outfits from Burberry with the money gained by sleeping with men;" (*Compare* Compl. ¶26 at 12 *with* Cahill Decl., Ex. B, "Sophie" on Apr. 29, 2018.) <br><br> "[T]he slut was sleeping with other men right after she married the last husband …" (*Compare* Compl. ¶18 at 7 *with* Cahill Decl., Ex. B, "Tiffany C" on Sept. 14, 2018.) <br><br> "This girl is such a horrid sack of crap, not for just sleeping around …" (*Compare* Compl. ¶18 at 7 *with* Cahill Decl., Ex. C, "Tiffany C" on July 24, 2018.) <br><br> "[H]e found out she was sleeping around …" (*Compare* Compl. ¶24 at 10 *with* Cahill Decl., Ex. D, "Cheater" on Sept. 24, 2018.) |
| "Was known to be the last husband's mistress …" (Cahill Decl., Ex. B on Jan. 3, 2018.) | "When in fact she is also the mistress of one;" (*Compare* Compl. ¶26 at 11 *with* Cahill Decl., Ex. B, "Sophie" on Apr. 29, 2018.) <br><br> "She has been the mistress of many in a crew…" (*Compare* Compl. ¶18 at 6 *with* Cahill Decl., Ex. B, "So" on Aug. 10, 2018.) <br><br> "She was the mistress of many men and as she likes to say gained Financial Freedom" (*Compare* Compl. ¶18 at 7 *with* Cahill Decl., Ex. B, "Tiffany C" on Sept. 27, 2018.) <br><br> "[S]he was also the mistress of her last husband." (*Compare* Compl. ¶20 at 8*with* Cahill Decl., Ex. E on August 14, 2018.) |

The foregoing are just some examples of the retreaded statements identified in the Complaint but which are not actionable because these modifications to earlier content are not substantive changes "**alter[ing] the meaning of the original defamatory article[.] [Nor was] a new defamatory statement incorporated into the original article. . .**" *Petro-Lubricant*, 233 N.J.

9

at 256 (emphasis added). To be sure, with the exception of some minor wordsmithing, the alleged defamatory statements are nearly **identical** in their message and meaning to those statements that precede them. This is true both as to the appearance and position of the allegedly offending statements on the various websites, i.e., the seriatim display of an original post followed by a reader's comments (Cahill Decl. Exs. B through H) as well as the subject matter of these statements vis-à-vis the time-barred statements. (Cahill Decl., Exs. A and B.)

As the Ninth Circuit determined in *Yeager*, "[t]here is no evidence in the record that the [Lin] added any information about [Yang in her responses], or changed any of the challenged statements . . . after [the statutory period ended]." *Yeager*, 693 F. 3d at 1082; *see also Hoesten v. Best*, 34 A.D.3d 143, 151 (1st Dept. 2006) (rejecting plaintiff's claim of republication where "statements . . . were made on a new occasion, [but] nonetheless were made to the same audience and involved the identical subject matter."); *Petro-Lubricant*, 233 N.J. at 257 ("Most of the changes to the article were minor in nature, such as replacing the article's title and the photograph at the top of the page. . . . Those changes did not constitute a republication."). Consequently, inasmuch as plaintiff's opposition to the motion rests on grounds Lin's alleged modifications of earlier statements are "significant," they are not. For this reason, Lin's statements are not a republication sufficient to overcome the statute of limitations bar which is fatal to plaintiff's claims.

Third, it cannot be said that Lin's purported statements, mere modifications of earlier postings, were done with any "inten[tion of] . . . reach[ing] a new audience." *Firth*, 98 N.Y.2d at 371. Plaintiff's allegations and the various Internet-based sources from which they are derived prove this point, as all of the statements in support of her claim – except those contained in paragraphs 29 and 30 of the Complaint – appear in the form of "call and response" interactions between the initial speaker and the audience **on the same websites**. Moreover, Lin's alleged statements do not materially differ from the earlier time-barred publications. (*Compare generally*

10

Compl. *with* Cahill Decl., Exs. A and B.) *Petro-Lubricant*, 233 N.J. at 255, citing *Atkinson v. McLaughlin,* 462 F.Supp.2d 1038, 1054-55 (D.N.D. 2006) (updating list of names and addresses of Board of Directors was unrelated to defamatory content and not republication because it "did not materially or substantially alter the substance or content"); *see also Hoesten*, 34 A.D.3d at 151.

Accordingly, to acknowledge the statements attributed to Lin as anything more than mere modifications constituting a republication would violate the legitimate policy concerns at the center of the New Jersey Supreme Court's decision in *Petro-Lubricant*. For this reason, plaintiff's claim for defamation should be dismissed.

### B. The Statements at Issue are not Defamatory.

Finally, even if plaintiff's claims were not time barred, or the statements could credibly be deemed to be a republication – which they cannot – the statements at issue are not defamatory, despite plaintiff's characterization of them to the contrary.

A statement is defamatory when it is false and injurious to the reputation of another or exposes another person to hatred, contempt or ridicule. *Romaine v. Kallinger*, 109 N.J. 282, 289 (1988). To establish a claim for defamation, a plaintiff must establish, in addition to damages and fault, that the defendant made a defamatory statement of fact, concerning the plaintiff, which was false and communicated to a person other than the plaintiff. *Beck v. Tribert,* 312 N.J. Super. 335, 349 (App. Div. 1998); *Feggans v. Billington,* 291 N.J. Super. 382, 390-91 (App. Div. 1996).

In order to state a claim for defamation under New Jersey law, "a plaintiff must show that the defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault." *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204 (D.N.J. 2011).

The first element, whether a statement is defamatory, requires an analysis of "its content, verifiability, and context." *Lynch v. New Jersey Educ. Ass'n*, 161 N.J. 152, 167 (1999). "If a

11

statement has more than one literal meaning, the critical consideration is what a reasonable reader would understand the statement to mean." *Id*.

Whether a statement is one of fact or opinion, and more broadly whether it is susceptible to defamatory meaning, is a question of law for the Court. *Kotlikoff v. The Cmty. News*, 89 N.J. 62, 67 (1982). Statements of "pure" opinion—i.e., when the speaker states the facts on which an opinion is based—cannot trigger liability. *Id.* at 68-69. Factual statements are those capable of verification, i.e., subject to proof of truth or falsity in relation to external realities; pure opinion statements are not capable of such verification because they reflect only one's state of mind. *See Ward v. Zelikovsky*, 136 N.J. 516, 530 (1994). New Jersey also recognizes a distinction "between genuinely defamatory communications as opposed to obscenities, vulgarities, insults, epithets, name-calling, and other verbal abuse." *Id.* Quite simply, "[n]ame-calling is not actionable under defamation law because a certain amount of vulgar name-calling is tolerated, on the theory that it will necessarily be understood to amount to nothing more." *Id.,* at 538 (internal quotations omitted). Because name-calling is not actionable, statements that a person is a "racist," "bigot," "Nazi," or a "bitch" are not defamatory. *Id.* (holding statements that one plaintiff was a "bitch" and that plaintiffs were anti-Semitic are not actionable). In *Ward*, the Supreme Court of New Jersey held that "[d]efendant's language was extremely repulsive and hateful and undoubtedly caused the Wards great embarrassment" but it was not defamatory. *Id*. at 542. Thus, only where the allegedly defamatory statements imply reasonably specific assertions of fact will the claim be allowed to proceed. *Id.*, *at* 530. As applied here, however, none of the statements contained in the Complaint rise to this level.

Beginning with the statements identified in paragraphs 29 and 30 of the Complaint, these are statements of pure opinion, incapable of verification because the statements reflect only Lin's state of mind, and are, therefore, not defamatory. *See Ward*, 136 N.J. at 531. These two

statements, as well each of the remaining statements contained in paragraphs 18 through 28 of the Complaint, are similar to other statements of opinion that have been found under New Jersey defamation law not to be cognizable; akin to such statements that a person "was a bitch," *id*. at 537, "was dishonest and lacking in integrity," *Gulrajaney v. Petricha*, 381 N.J. Super. 241, 253 (App. Div. 2005), or that someone "was a bad guy" and that his "word was not good," *Beverly Hills Motoring, Inc. v. Morici*, Case No. 14-cv-756, 2015 WL 248352, at *5 (D.N.J. Jan. 20, 2015).

Second, plaintiff's effort to isolate the statements in the Complaint removes them from the context in which they appear, namely, as **responses** to prior published statements made on the same websites as those identified in the Complaint. "The threshold issue in any defamation case is whether the statement at issue is reasonably susceptible of a defamatory meaning. ... In assessing the language, **the court must view the publication as a whole and consider particularly the context in which the statement appears.**" *Romaine*, 109 N.J. at 290 (internal citations omitted) (emphasis added).

In this case, considering the colorfully worded websites on which these statements appear, which includes titles such as "cheatersandbastards.com" "shesahomewrecker.com," and "exposecheatersonline.com" plaintiff's implied conclusion that these websites may be viewed as sources of unbiased, reliable, or even verifiable information capable of placing a party in a positive light is unsupportable.

In the end, the statements about which plaintiff complains wholly lack the defamatory meaning plaintiff would ascribe to them. Members of the community simply would not "avoid plaintiff" nor would plaintiff's reputation be harmed due to the allegations complained of considering their sources. *See W.J.A. v. D.A.*, 416 N.J. Super. 380, 384-85 (App. Div. 2010),

*aff'd and remanded*, 210 N.J. 229 (2012), citing *McLaughlin v. Rosanio*, 331 N.J. Super. 303, 312 (App. Div. 2000)). Accordingly, no cause of action for defamation may lie.

### IV.     CONCLUSION

For all these reasons, defendant Peony Lin respectfully requests that this Court dismiss the Complaint of plaintiff Tzuhsin Yang a/k/a Christine Yang with prejudice.

Respectfully submitted,

/s/ Arla Cahill_____
Arla Cahill
Joel G. MacMull
**MANDELBAUM SALSBURG P.C.**
3 Becker Farm Road
Roseland, New Jersey 07068
Tel.: 973-736-4600
Fax: 973-325-7467
Email: acahill@lawfirm.ms
Email: jmacmull@lawfirm.ms

*Attorneys for Defendant - Peony Lin*

Dated:  April 23, 2019