UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TZUHSIN YANG, a/k/a
CHRISTINE YANG,

       Plaintiff,

  v.

PEONY LIN, *et al.*,

       Defendants.

Case No. 19–cv–08534–ES–ESK

OPINION AND ORDER

**KIEL**, U.S.M.J.

    This matter is before the Court on the parties' 463-page joint submission filed on December 2, 2020 concerning certain discovery disputes. (ECF No. 63.) The parties met and conferred to try to resolve the disputes but have not been successful. (*Id.* p. 1.)

    Plaintiff Tzuhsin Yang (Yang) filed the complaint in this matter on March 14, 2020. (ECF No. 1.) Yang alleges "that beginning in or around 2016, Lin published and conspired with others to publish false and defamatory statements about [Yang] in various … 'shaming' websites … " (ECF No. 63 p. 2.) On March 18, 2020, I entered a pretrial scheduling order requiring fact discovery be completed by September 3, 2020. (ECF No. 41 ¶ 2.) Although discovery disputes have arisen, the parties have exchanged substantial discovery. (ECF No. 61 p. 1.)

    **I.  PLAINTIFF'S REQUESTS**

    Yang served a 103-page set of requests for admission containing 126 requests. (ECF No. 63-1.) There are three categories of requests for defendant Peony Lin (Lin) to admit: (1) she authored or co-authored certain defamatory statements, where the request does not reference the "shame

website" on which the statements were posted; (2) she authored or co-authored certain defamatory statements, where the "shame website" is referenced in the request; and (3) certain defamatory statements referenced in the complaint are false or were false at the time of publication. (ECF No. 63-1.) Lin responded to the requests that do not reference a "shame website," saying:

> In addition to the General Objections, Lin objects to this Request on the basis that it presents a purported "statement" in the abstract and is untethered to any specific document that sufficiently identifies the statement to which the Request refers or the date on which it was purportedly made. As such, the Request violates the requirements of Fed. R. Civ. P. 36(a)(2). And, because Lin is without sufficient facts by which to admit or deny the Request, she therefore denies it.

(ECF No. 63-4.) In response to the requests that reference the "shame website" where the allegedly defamatory statement was published, Lin responded:

> In addition to the General Objections, Lin objects to this Request on the basis that it presents a purported "statement" in the abstract and is untethered to any specific document that sufficiently identifies the statement to which the Request refers or the date on which it was purportedly made. As such, the Request violates the requirements of Fed. R. Civ. P. 36(a)(2). And, because Lin is without sufficient facts by which to admit or deny the Request, she therefore denies it.

(*Id.*) Requests 123 and 124 ask Lin to admit that certain of the allegedly defamatory statements set forth in the complaint are "false" or "false when they were published." (*Id.* pp. 108–109.) Lin responded to these requests, saying:

> In addition to the General Objections, Lin objects to this Request on the basis that it refers to a series of "statements" in the abstract that are untethered to

2

> any specific document that sufficiently identifies the statements to which the Request refers or the date on which they were purportedly made. As such, the Request violates the requirements of Fed. R. Civ. P. 36(a)(2). Lin further objects to this Requests [*sic*] insofar as it attempts to cover a variety of separate admissions in a single subdivided question and is therefore compound and improper. Lin also objects because the statements are those of opinion, not fact, and therefore are incapable of being objectively proven true or false.
>
> Subject to and without waiving the foregoing General Objections and specific objections, because Lin is without sufficient facts by which to admit or deny the Request, she therefore denies it.

(*Id.*)

Federal Rule of Civil Procedure (Rule) 36 permits a party to serve a written request to admit the truth relating to: "(A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." The purpose of requests for admission is to expedite the trial by establishing certain material facts as true, thus reducing the number of issues for trial. *See Creely v. Genesis Health Ventures, Inc.*, No. 04-00679, 2005 WL 44526, at *2 (E.D. Pa. Jan. 10, 2005). Rule 36 does not place a limit on the number of requests for admission.

Although Yang complains that Lin's responses to the requests for admission are inadequate, I find that Lin has sufficiently responded to all of the requests. Yang asserts she wants Lin to simply "admit or deny that she authored specific statements." (ECF No. 63.) In response to each of the requests, however, Yang has stated that she does not have "sufficient facts by which to admit or deny the [r]equest." Such a response is appropriate under Rule 36, which permits a responding party to neither admit nor deny a request if the party states "in detail why the answering party cannot truthfully admit or deny it." Rule 36(a)(4).

3

Lin responded to the requests for admission on June 5, 2020 and has not supplemented the responses. (ECF No. 63-4 p. 110.) Of course Yang is not without a remedy if she can prove the "matter true." Fed.R.Civ.P. 37(c)(2). I leave it to Lin to determine whether she leaves herself at peril to the sanctions available under Rule 37(c)(2) by not amending her responses to the requests for admission if she does, in fact, now have sufficient facts by which to admit or deny the requests.

Also, Yang's counsel inquired about most, if not all, of the factual issues raised in the requests for admission during Lin's deposition on November 6, 2020. (ECF No. 63 p. 21.) Yang does not dispute this statement. Rule 26(b)(2)(C) requires a court to limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Here, it appears the parties have engaged in substantial discovery, including depositions, following Lin's responses to the requests for admission.

The request to compel further responses to the requests for admission is **DENIED**.

Interrogatories 1, 2, and 6: These interrogatories request information about Lin's email addresses and electronic devices she used from January 1, 2015 to the present. Similar to the requests for admission, Yang questioned Lin about her email addresses and electronic devices during Lin's deposition. There does not appear to be any dispute that Lin fully responded to those questions. This request is **DENIED**.

Interrogatories 3 and 5: These interrogatories request information about the mobile phones and internet service providers used by members of Lin's household. (ECF No. 63 pp. 9–10.) Lin objected to these interrogatories as seeking information that is not relevant to this matter, not proportional, and overbroad and unduly burdensome. (ECF No. 63-5 pp. 7–8.) More importantly, Lin also objected because the information sought implicates

privacy concerns of third-parties. (*Id.*) I agree that these interrogatories are overly broad and would require Lin to obtain the consent from third-parties, which she is not obligated to obtain. If Yang seeks to get information from the members of Lin's household, Yang would need to issue subpoenas to these third-parties.

Accordingly, the request is **DENIED**.

Interrogatory 9: This interrogatory requests "all facts that support the truth" of the allegedly defamatory statements. (ECF No. 63-5 pp. 10–11.) There does not appear to be any dispute that Yang's counsel inquired about the allegedly defamatory statements and Lin fully responded to the inquiry at her deposition. (ECF No. 63 p. 25.) The response to the interrogatory, moreover, details the source of Lin's information for the statements. This request is **DENIED**.

Interrogatory 10: This interrogatory asks for an explanation of why Lin authored or co-authored the allegedly defamatory statements that Lin admits she authored or co-authored. (ECF No. 63-5 p. 11.) Lin objected to this interrogatory for a number of reasons, but principally because she believes her motivation in posting the statements is irrelevant because the statements are defamation *per se*, which does not require a showing of fault. (ECF No. 63 p. 26.) This legal conclusion may be correct but there has been no stipulation in this matter, to my knowledge, wherein Lin has conceded the statements are defamatory *per se* and she is liable for damages as a result, without proof of fault. Accordingly, Lin's culpability for making the statements is relevant. Also, Lin says she testified as to her motivation for posting three of the statements. (ECF No. 63 p. 26.) That does not excuse Lin from responding fully to this interrogatory with an explanation for why she posted *all* of the statements referenced in the interrogatory. This request is **GRANTED** and Lin is directed to respond to this interrogatory.

Interrogatories 19 and 20:   These interrogatories request "[all] facts" and "the source of [all] facts that [Lin] knew about [Yang] before this action was filed."   (ECF No. 63-5 pp. 17–18.)   Lin objected to these interrogatories stating that they were overly broad, unduly burdensome, not relevant, not proportional to the needs of the case, far exceed the applicable time period relevant to this case, and for privilege.   (*Id.*)   Lin also argues that these interrogatories are improper "contention interrogatories" because responses would require "a narrative account of [the] case" and Yang's counsel elicited testimony at Lin's deposition in response to these interrogatories.   (ECF No. 63 p. 27.)

There does not appear to be any dispute that Yang's counsel inquired about Lin's knowledge of Yang and the sources of her knowledge that Lin had about Yang before the case was filed.   Rule 26(b)(2)(C) requires a court to limit discovery where the discovery "sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."   It appears, here, that Yang has already obtained the information and, accordingly, this request is **DENIED**.

Request Nos. 1, 13:   These requests demand the production of "ALL DOCUMENTS that refer to [Yang]" and "DOCUMENTS that reference or relate to ANY" of the alleged defamatory statements referenced in the complaint."   (ECF No. 63-8 pp. 6, 9.)   Lin interposed numerous objections but produced documents Bates stamped LIN016–019, initially, and supplemental documents through an amended response.   (*Id.* pp. 6–7.)   Yang complains that Lin failed to serve a privilege log, while holding back documents based on privilege, and failed to confirm she "performed a diligent search and produced all documents within her possession, custody, or control."   (ECF No. 63 p. 13.)

First, if Lin is withholding responsive documents based upon a claim of a privilege, Lin is directed to prepare and serve a privilege log to Yang. Lin's request for a privilege log from Yang is **GRANTED**.   Second, there is no

requirement that Lin's responses confirm she performed a diligent search and produced all responsive documents. The production of documents and the written response to the requests for production implicitly acknowledge the responding party has made a diligent search and produced all responsive, non-privileged documents. Accordingly, this aspect of the request is **DENIED**.

Request Nos. 10 and 11. Similar to interrogatories 3 and 5, these requests demand production of documents relating to electronic devices owned by third-parties. This request is **DENIED** for the same reason.

Defendant's Document Production: Yang requests that Lin produce unredacted versions of screenshots of text messages, which were produced as LIN017–034. Yang seeks the unredacted versions in order to discern with whom the text messages were exchanged with and the context of the full messages. (ECF No. 63 p.16.) Lin claims she does not have the "complete versions" of the text messages and she was asked about the text messages during her deposition, where she identified the person with whom she was communicating. (*Id.* p.28.) Not having anything before me to contradict Lin's statement, this request is **DENIED**.

Defendant's Privilege Log: As set forth above, a party who withholds the production of relevant, responsive documents or information based on a claim of a privilege must serve a privilege log on the requesting party.

## II. DEFENDANT'S REQUESTS

Re-Production of Yang's Social Media Accounts: In resolving a prior discovery dispute, I entered an Order on September 1, 2020 directing Yang to produce certain social media posts. (ECF No. 54.)

> Defendant's request for an order to compel responses to Interrogatory 21 and Document Request 20 is **GRANTED in part and DENIED in part**. The request is GRANTED to the extent Interrogatory 21 and Document Request 20 seek the production of plaintiff's social media posts from 2015 to the

7

> present that were, at any time, publicly accessible. The request is also GRANTED to the extent Interrogatory 21 and Document Request 20 seek the production of plaintiff's social media posts from 2015 to the present whose access was restricted **and** contain references, if any to: (1) plaintiff engaging in social activity from 2018 to the present; or (2) plaintiff soliciting individuals for prostitution. All other requests in Interrogatory 21 and Document Request 20 are DENIED.

(*Id.* ¶ 2.) Yang produced her social media posts and used "the internal download features within her Facebook and Instagram accounts" to prepare the production. (ECF No. 63 p. 30.) This "download" method, however, results in a "fragmented download of files, devoid of context, including any accompanying text or images … " (*Id.*) Lin explains that when such a "download" method is used, different types of files—such as text files and picture files—are separated into "bricks." (*Id.* p. 33.) Thus, a person reviewing the production cannot discern, for example, what messages correspond to a picture. (*Id.*) In essence, Lin wants to be able to see the "'timeline' of text and photographs" that a viewer of Yang's social media pages would normally see on the Facebook or Instagram platform. (*Id.*)

In an attempt to resolve the dispute, Lin proposed to Yang that Yang produce "screenshots" of the social media posts. (*Id.* p. 30.) Yang rejected the proposal. (*Id.* p. 31.) Lin next proposed the use of a third-party vendor under an Agreement Regarding Forensic Protocols (Forensic Protocols). (*Id.*; ECF No. 63-10.) Yang also rejected this proposal. (ECF No. 63 p. 32.)

Yang, in opposition, argues that she has produced her social media posts as they are kept "in the usual course of business" and notes that she produced "over 4,000 Instagram and Facebook files," which took her attorneys 17 hours to review. (*Id.* pp. 36–37.) Yang also argues the costs attendant to reviewing the social media posts a second time, after extraction by a third-

party vendor, would not be proportional to the needs of the case. (ECF No. 63 p. 38.)

In hindsight perhaps, counsel realize they should have met and conferred and agreed on the format of the production before Yang's counsel spent 17 hours reviewing the social media posts for production. I commend counsel for anticipating and resolving other potential issues through stipulations—such as the Remote Deposition Protocol (ECF No. 60.) The format of the production, however, was not addressed before the production, so I must now weigh the potential cost of a re-production against Lin's need to review the production in a useable format.

Here, Rule 34(b)(2)(E)(i)'s grant to the responding party the option to produce documents "as they are kept in the usual course of business" is not applicable. Yang's social media posts are not kept—or maintained—by Yang but by Facebook and Instagram. The more relevant provision of Rule 34 to this dispute is Rule 34(b)(2)(E)(ii), which requires a responding party to produce electronically stored information "in a form or forms in which it is ordinarily maintained or in a reasonably useable form or forms." Facebook and Instagram posts are "maintained" on these social media services' platforms in a "timeline" manner that provides context between images and messages. Lin's production is not in a format that her social media posts are "maintained" on Facebook and Instagram. Second, Lin's production is not in a "useable form or forms." Messages, texts, videos, and other postings devoid of temporal or relational context are meaningless and are not "useable."

I appreciate Yang's concern about the potential cost of re-production. But, here, Lin will bear the cost of the third-party vendor who will extract the information into a useable form. (ECF No. 63 p. 33.) The proposed Forensic Protocols, moreover, address Yang's privacy concerns in that Yang and her counsel will be provided a "first look" before Lin and her counsel are permitted to review the ESI obtained by the third-party vendor. (ECF No. 63-10.) It

9

also bears noting that prior to the commencement of this lawsuit, Yang's social media posts were publicly available but are no longer accessible. (ECF No. 63 p. 34.) The September 1, 2020 Order, moreover, limited the production of Yang's social media posts to those that were publicly accessible and to a very limited set of posts that were not publicly accessible. (ECF No. 54 ¶ 2.)

Lin's request to require Yang to re-produce her social media posts is **GRANTED**. Yang may produce screenshots corresponding to her prior production. Alternatively, the Forensic Protocols are approved and shall dictate the re-production. Yang shall advise Lin's counsel within 10 days of this Order how she wishes to proceed with the re-production.

**IT IS SO ORDERED.**

                                                      */s/ Edward S. Kiel*
                                                     **EDWARD S. KIEL**
                                                     **UNITED STATES MAGISTRATE JUDGE**

Date: February 5, 2021