**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TZUHSIN YANG a/k/a CHRISTINE YANG, | |
| **Plaintiff,** | Civil Action No.: 19-8534 (ES) (ESK) |
| **v.** | **OPINION** |
| PEONY LIN, *et al.*, | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendant Peony Lin's appeal of the Honorable Edward S. Kiel's September 20, 2021 Order (D.E. No. 88 ("Order")), denying Defendant's request to bar Plaintiff Tzuhsin Yang a.k.a. Christine Yang's supplemental discovery responses and granting Plaintiff leave to file an amended complaint. (D.E. No. 94). Defendant also moves to dismiss the amended complaint (D.E. No. 93 ("Amended Complaint" or "Am. Compl.")). (D.E. No. 98). Plaintiff opposed both motions (D.E. Nos. 96 & 101) and Defendant replied (D.E. Nos. 100 & 103). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, both the appeal and the motion to dismiss are **DENIED**.

## I.      BACKGROUND

On March 14, 2019, Plaintiff filed the original complaint in this matter, seeking injunctive relief and damages pursuant to a single claim for defamation and conspiracy to commit defamation against Defendant. (D.E. No. 1 ("Compl.") ¶¶ 66–77). Plaintiff alleged that from January through September 2018, Defendant published or conspired to publish several defamatory statements about

her on various websites and emails, many of which accuse Plaintiff of being a "prostitute," "whore," and "hooker."  (*Id.* ¶¶ 2–3, 14–28, 30, 34 & 66).

On April 23, 2019, Defendant filed a motion to dismiss the original complaint as untimely and for failure to state a claim.  (D.E. No. 6).  On March 2, 2020, the Court heard oral argument on the motion and determined that the original complaint was timely and sufficiently stated a claim for defamation.  (*See* D.E. No. 37, March 2, 2020 Hearing Transcript ("03.02.20 TR.") at 19:7–21:3, 36:5–37:7 & 51:14–52:19).  That same day, the Court issued an order denying Defendant's motion to dismiss.  (D.E. No. 36).

On March 18, 2020, the Court issued a scheduling order indicating that fact discovery would close on September 3, 2020.  (D.E. No. 41).  In April 2020, Plaintiff served responses to Defendant's interrogatories.  (D.E. No. 90, September 20, 2021 Hearing Transcript ("09.20.21 Tr.") at 5:24–6:3).  On November 6, 2020, Defendant testified that she was responsible for one of the fifty-four statements cited in the original complaint, as well as five additional statements posted using different usernames (the "Five Statements") that Plaintiff had not included in the original complaint.  (*Id.* at 5:8–15; *see also* D.E. No. 6-4 at 9, 14, & 16–17).[1]  On September 1, 2020, the Court issued a scheduling order extending fact discovery to December 31, 2020.  (D.E. No. 54).  On December 28, 2020, the Court issued a scheduling order extending fact discovery "until such time as the Court [] rules on" outstanding discovery disputes.  (D.E. No. 67).  On April 7, 2021, the Court issued a scheduling order extending fact discovery to May 21, 2021.  (D.E. No. 76).  On May 25, 2021, the Court issued a scheduling order extending fact discovery to June 30, 2021. (D.E. No. 80).

On June 23, 2021, Plaintiff indicated that she intended to serve supplemental responses to

---

[1]     The Court notes that page numbers for Docket Entry Number 6-4 refer to those automatically generated by the Court's electronic filing system.

Defendant's interrogatories.  (09.20.21 Tr. at 5:24–6:3).  The supplemental responses contained the Five Statements.  (*Id.* at 6:3–6).  On August 5, 2021, the parties submitted a joint letter regarding discovery disputes as to the supplemental responses. (D.E. No. 83).  On August 16, 2021, the Court held a settlement conference, during which the parties discussed the pending discovery disputes. (D.E. No. 85).  On September 20, 2021, the Court held a telephone conference, during which Judge Kiel analyzed the factors set forth in *Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894 (3d Cir. 1977), and determined that Plaintiff may provide the Five Statement in her supplemental discovery responses.  (09.20.21 Tr. 7:11–11:8).  Further, Judge Kiel reasoned that allowing Plaintiff to file the Amended Complaint with the Five Statements before the parties prepared a final pre-trial order would serve the interest of efficient case management and resolution of this case.  (*Id.* at 11:18–12:2).  Thereafter, Judge Kiel entered an Order denying Defendant's request to bar Plaintiff's supplemental discovery responses and sua sponte granting Plaintiff leave to file an amended complaint, solely for the purpose of adding the Five Statements. (*See* Order).  On September 27, 2021, Plaintiff filed the Amended Complaint.  (*See* Am. Compl.).

## II.      LEGAL STANDARDS

### A.      Appeal

A United States Magistrate Judge may hear and determine any non-dispositive pretrial matter pending before the Court.  28 U.S.C. § 636(b)(1)(A).  The district court will not disturb a magistrate judge's decision on these matters unless it is "clearly erroneous or contrary to law." *Id.*; Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  An order is contrary to law "when the magistrate judge has misinterpreted or misapplied the applicable law."  *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006).  A district court conducts a de novo review

3

of legal conclusions.  *See Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998).

"Where the appeal seeks review of a matter within the exclusive authority of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied."  *Experian Info. Sols., Inc. v. List Servs. Direct, Inc.*, No. 15-3271, 2018 WL 3993449, at *3 (D.N.J. Aug. 21, 2018) (quoting *Miller v. P.G. Lewis & Assocs., Inc.*, No. 05-5641, 2006 WL 2770980, at *1 (D.N.J. Sept. 22, 2006)).  "An abuse of discretion occurs 'when the judicial action is arbitrary, fanciful[,] or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court.'"  *Ebert v. Twp. of Hamilton*, No. 15-7331, 2016 WL 6778217, at *2 (D.N.J. Nov. 15, 2016) (quoting *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976)).

### B.    Motion to Dismiss

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'"  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citation omitted).  But the

court is not required to accept as true "legal conclusions."  *Iqbal*, 556 U.S. at 678.  And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

## III.     DISCUSSION

### A.     Appeal

Defendant essentially argues that Judge Kiel misapplied the *Meyers* factors by denying her request to bar Plaintiff's supplemental discovery responses.  (D.E. No. 94-1 ("Appeal Mov. Br.") at 4–18).  The Third Circuit's *Meyers* factors are used to evaluate whether a district court's decision of whether or not to exclude evidence as a discovery sanction constitutes a clear abuse of discretion.  *Meyers*, 559 F.2d at 903.  They are (i) prejudice or surprise to the party opposing the evidence; (ii) the ability of the proponent of the evidence to cure any prejudice; (iii) the extent to which allowing such evidence would "disrupt the orderly and efficient trial of the case"; (iv) "bad faith or willfulness in failing to comply with the court's order"; and (v) the importance of the evidence to the case.  *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (quoting *Meyers*, 559 F.2d at 904–05).

Applying these factors, the Court perceives no error, let alone an abuse of discretion, in Judge Kiel's analysis.  First, Defendant is not prejudiced by the Five Statements because, as Judge Kiel noted, Defendant was aware of the statements since she testified to making them during her November 2020 deposition.  (*See* 09.20.21 Tr. at 8:9–23).  Further, Defendant had notice as of June 23, 2021, before fact discovery was set to close, that Plaintiff intended to serve supplemental discovery responses with the Five Statements.  (*See id.* at 5:24–6:3).  Therefore, Defendant could not be surprised by their inclusion in Plaintiff's supplemental discovery responses and the Amended Complaint.  (*See id.* at 8:23–9:4).

Second, even if there were prejudice, Plaintiff took an opportunity to cure any such prejudice, which Defendant declined.  (*Id.* at 6:15–20 & 9:5–10).  Specifically, Plaintiff indicated her intent to submit the Five Statements in her supplemental responses the day before her deposition and offered to pay for any expenses related to extended depositions so Defendant would have the opportunity to further depose Plaintiff, yet Defendant declined the offer.  (*Id.* at 6:15–20).  Moreover, as Judge Kiel noted, Defendant would still have an opportunity to question Plaintiff regarding the Five Statements before the parties submitted a final pretrial order.  (*See id.* at 9:10–13).  Finally, as Judge Kiel noted, there was no prejudice from the late disclosures in connection with the preparation of expert reports because the parties did not intend to retain experts.  (*See id.* at 9:13–18).

Third, nothing in the record indicates that a trial would be any more difficult or disrupted by the inclusion of the Five Statements at the time of Judge Kiel's Order because a trial had not yet been scheduled and the parties had not yet filed a final pretrial order incorporating all claims and defenses.  (*See id.* at 9:19–10:2).  As Judge Kiel noted, "that process . . . is many months away so there is sufficient time to cure any alleged prejudice by the late disclosure which will resolve any potential issues with preparation of the final pre-trial order and the testimony at trial."  (*Id.* at 10:4–9).

Fourth, nothing in the record indicates bad faith or willful conduct in Plaintiff's request to supplement her discovery responses approximately one month after the close of fact discovery. Beyond Defendant's belief that Plaintiff was engaging in "shark tactics," Judge Kiel did not find any indication that the late submission was purposeful.  (*Id.* at 10:19–24).  Consistent with Judge Kiel's view, the Court accepts Plaintiff's counsel's explanation that the late submission of the supplemental responses was inadvertent.  (*Id.* at 7:3–10 & 10:10–14).

Fifth, the Five Statements are of critical importance to Plaintiff's defamation claim. As Judge Kiel noted, Defendant had admitted to publishing only one of the fifty-four statements cited in the original complaint. (*See id.* at 10:25–11:8). Defendant also admitted to publishing the Five Statements. (*See id.* at 5:8–15). Thus, the Five Statements contain five of the six statements Defendant has admitted to publishing in this action.

Therefore, the Court finds that Judge Kiel did not misapply the law or otherwise commit error. *See Doe*, 237 F.R.D. at 548. Denying Defendant's request to bar the Five Statements did not constitute an abuse of discretion under the *Meyers* factors. And it is not the case that "no reasonable person would adopt the [Magistrate Judge's] view." *See In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 858 F.3d 787, 792 n.22 (3d Cir. 2017) (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir. 2000)). As such, Plaintiff fails to show any reason why Judge Kiel's decision to issue the Order should be disturbed. Accordingly, the Court denies the appeal and affirms the Order.[2]

### B.   Motion to Dismiss

#### i.   Statute of Limitations

Defendant argues that each of the Five Statements are time-barred by the statute of limitations because they do not relate back to the original complaint. (D.E. No. 98-1 ("MTD Mov. Br.") 8–12). The Court disagrees.

The Court first notes that it determined that Plaintiff sufficiently stated a claim for defamation in the original complaint during the March 2, 2020 oral argument. (03.02.20 TR. at 50:16–52:19). Further, although not required at the motion to dismiss stage, the original complaint

---

[2]     Defendant additionally argues that Judge Kiel's decision to sua sponte allow Plaintiff to file the Amended Complaint was improper because the Five Statements are barred by the statute of limitations under N.J.S.A. 2A:14-3. (Appeal Mov. Br. at 16 n.3). The Court disagrees, and fully addresses this argument in Section III.B below.

included fifty-four allegedly defamatory statements, many of which accused Plaintiff of being a "prostitute," "whore," and "hooker." *See Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 467 (D.N.J. 2020) ("At the motion to dismiss stage, the plaintiff need not identify the precise defamatory statements made by the defendant."); (*see also* Compl. ¶¶ 3, 15–18, 32–50 & 66).

Next, the Court considers whether the Five Statements[3] included in the September 27, 2021 Amended Complaint relate back to the original complaint. Under New Jersey law, a claim for defamation is subject to a one-year statute of limitations. N.J.S.A. 2A:14-3. The Five Statements were published on August 16, September 20, October 7, October 27, and December 18, 2018; thus,

---

[3]      The Five Statements are:

- I find it amusing she is actually looking for a job, its more network opportunity to sleep with more men she has very low level literacy, is capable of only simple language, and will fall for you as long as you keep on complimenting her 'oh! you are so pretty' she is a sick women, and a back stabber, for your own safety, stay away from her!

- lol hope your friend got out of that relationship before she drained his bank account. Its [sic] impossible for her to hang out with talented friends, intelligent women would never lower themselves to be friends with this whore. all she talks about all day is beauty, bags, and crap.

- this whore moving to the east coast now?

- she is such a psycho, seems like she was trying to mess with her ex husband's ex wife again. how much lower can you get, you are just a whore, remember that!

- hahaha.  so funny, with so many Chinese knowing her by now (and simply doing a google search her reputation is already trashed all over internet) I wonder how long she can last. fortunately American is so big she can more [sic] to 50 diff states and hunt for a new target in each new city lol but I wonder why these men don't pick someone more beautiful, more natural make up (there are tons of pretty asians out there, and much more educated) dunno why men would fall for someone with 3 inch makeup and 5 inch fake eyelash. anyone seeing her, even if is a first time meet & greet, can totally tell she is a prostitute (from head to toe she looks like a prostitute no doubt) and its [sic] so obvious she is the type of girl who cannot keep her legs closed.

(Am. Compl. ¶ 18).

they were published throughout the same year as those alleged in the original complaint, but more than one year before Plaintiff filed the Amended Complaint.  (*See* MTD Mov. Br. at 8; D.E. No. 6-4 at 9, 14 & 16–17).  Therefore, under Federal Rule of Civil Procedure 15(c), the Five Statements will be time-barred unless they relate back to the original complaint.  Federal law as to the relation back doctrine controls in diversity actions.  *See, e.g., Britt v. Arvanitis*, 590 F.2d 57, 60 (3d Cir. 1978) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)); *see also Contemp. Mission, Inc. v. N.Y. Times Co.*, 665 F. Supp. 248, 255 (S.D.N.Y. 1987) ("[w]hile state law must be applied in a diversity case to determine whether an action is barred by the statute of limitations, most courts considering the issue have held that the federal rule as to relation back applies even in a diversity case, since the question of relation back of amendments to pleadings is properly a matter of practice and procedure and is specifically dealt with in the Federal Rules of Civil Procedure") (internal citation omitted), *aff'd,* 842 F.2d 612 (2d Cir. 1988).

"[T]he relation-back doctrine under Rule 15(c) allows a court to treat a later-filed amended pleading as if it had been filed at the time of the initial pleading."  *S.E. Penn. Trans. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 344 (3d Cir. 2021).  Rule 15(c) provides that an amended pleading will relate back to the initial pleading when, among other things, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  The relevant inquiry is whether "adequate notice has been given to the opposing party 'by the general fact situation alleged in the original pleading.'" *Contemp. Mission*, 665 F. Supp. at 255 (quoting *Rosenberg v. Martin,* 478 F.2d 520, 526 (2d Cir. 1973)).

"[A]mendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction[,] or occurrence in the

preceding pleading fall within Rule 15(c)." *S.E. Penn. Trans. Auth.*, 12 F.4th at 345 (quoting *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004)).  Indeed, the Supreme Court has long applied the relation-back doctrine to amendments that "merely expand[ ] or amplif[y]" claims in the initial pleading."  *Id.* (alterations in original) (quoting *Seaboard Air Line Ry. v. Renn*, 241 U.S. 290, 293–94 (1916)); *see also Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391, 404 (S.D.N.Y. 2004) (finding defendant airline agent's statement that plaintiff passenger "kicked" defendant on the airplane clearly arose from same core set of operative facts as original defamation claim based on defendant's statement that plaintiff was intoxicated on the airplane); *Contemp. Mission*, 665 F. Supp. at 256 (holding relation-back doctrine applied to additional allegedly libelous statements from the same article that formed the basis of the original complaint).  Rule 15(c) thus applies here as long as the Amended Complaint restates Plaintiff's defamation claim with greater particularity or amplifies the pertinent factual circumstances.

As previously noted, Plaintiff's original complaint alleged fifty-four defamatory statements published from January through September 2018, many of which accused Plaintiff of being a "prostitute," "whore," and "hooker."  (Compl. ¶¶ 3, 32–46 & 66).  Twenty-seven of those statements were published on the same website as the Five Statements, cheatersandbastards.com. (*Id.* ¶¶ 15–18; Am. Compl. ¶ 18).  The original complaint alleged that Defendant and a co-conspirator widely disseminated "false and defamatory statements about Plaintiff on numerous websites, in chat messages, and in email." (Compl. ¶ 2).  Moreover, the original complaint alleged that the defamatory statements "include" the statements provided; it did not allege that Defendant's statements were *limited* to the statements provided.  (*Id.* at 18).  The Five Statements are of the same nature as those alleged in the original complaint, accusing Plaintiff of engaging in sexual intercourse for opportunity and being a "prostitute" and a "whore."  (*Compare id.* ¶¶ 15–18, *with*

Am. Compl. ¶ 18).

It is without question that adequate notice has been given to Defendant by the general factual situation alleged in the original complaint. *See Contemp. Mission*, 665 F. Supp. at 255. The Five Statements arise from the same conduct that formed the basis of the original complaint under Rule 15(c). The Amended Complaint both restates the defamation claim with greater particularity and amplifies the factual circumstances surrounding the relevant conduct by including additional allegedly defamatory statements Defendant and/or her co-conspirator allegedly posted to cheatersandbastards.com. *See S.E. Penn. Trans. Auth.*, 12 F.4th at 345. The Five Statements thus add more factual detail to Plaintiff's existing defamation claim. Accordingly, the relation-back doctrine applies to the Five Statements.[4]

### ii.    Defamation

Defendant argues that Plaintiff fails to state a cognizable defamation claim. (MTD Mov. Br. at 12–14). The Court disagrees. The Court has already determined that the statements alleged in the original complaint constitute mixed opinion and fact sufficient to state a claim for defamation. (03.02.20 TR. at 50:16–52:19 (citing *Kotlikoff v. The Cmty. News*, 444 A.2d 1086, 1088–91 (N.J. 1982), *Lynch v. N.J. Educ. Ass'n*, 735 A.2d 1129, 1137 (N.J. 1999), and *Petro-Lubricant Testing Labs., Inc. v. Adelman*, 184 A.3d 457, 466 (N.J. 2018)). Similarly, the Court finds that the Five Statements constitute mixed opinion and fact sufficient to state a claim for defamation.

---

[4]    Defendant points out that "the judicially created 'discovery rule,' which defers the accrual of certain causes of action until the plaintiff knows or should know that he has been injured, is inapplicable to" defamation claims under New Jersey law. (MTD Mov. Br. at 9 (quoting *R.K. v. Y.A.L.E. Sch., Inc.*, 621 F. Supp. 2d 188, 202 (D.N.J. 2008))). Because Plaintiff's cause of action is timely under the relation back doctrine, Plaintiff does not, and need not, rely on the discovery rule. The discovery rule is thus inconsequential.

"To establish defamation under New Jersey law, a plaintiff must show the defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault." *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204 (D.N.J. 2011) (quoting *Singer v. Beach Trading Co.,* 379 N.J. Super. 63, 79, 876 A.2d 885 (N.J. App. Div. 2005)).  Defendant focuses on the first element of defamation. (MTD Mov. Br. at 12–18).

### 1.   False and Defamatory Statements

Whether a statement is defamatory depends on its verifiability, context, and content.  *Lynch*, 735 A.2d at 1136.

First, Plaintiff plausibly alleges that the Five Statements are verifiable as they reference sexual intercourse for compensation.  (*See* 03.02.20 Tr. at 52:7–13).  "Determining if a statement is one of fact or opinion rests on the concept of verifiability, because if a statement cannot be proven true or false, it cannot be subject to liability." *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 183 (3d Cir. 2020); *see also Lynch*, 735 A.2d at 1137.  "[N]ame calling, epithets, and abusive language, no matter how vulgar or offensive, are not actionable." *Ward v. Zelikovsky*, 643 A.2d 972, 978 (N.J. 1994).  However, a statement of "mixed opinion" is one that is "apparently based on facts about the plaintiff or his conduct that have neither been stated by the defendant nor assumed to exist by the parties to the communication." *Mangan*, 834 F. Supp. 2d at 205 (quoting *Kotlikoff*, 444 A.2d at 1089).  Mixed opinion may lead to liability for defamation when the statements "imply false underlying objective facts." *Gulrajaney v. Petricha*, 885 A.2d 496, 504 (N.J. Super. Ct. App. Div. 2005); *see also Lynch.*, 735 A.2d at 1137.  "Whether a given statement is one of fact or opinion is a question of law to be determined by the court." *Arista Recs., Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 425 (D.N.J. 2005).  The Court finds that Plaintiff plausibly

alleges the Five Statements constitute mixed opinion and go beyond the name-calling contemplated in *Ward.*  643 A.2d at 978.  They are not pure opinion because they are based on underlying factual assertions that are verifiable.  Whether Plaintiff engaged in sexual intercourse for compensation is not merely an insult—it can be proven true or false.  The Five Statements as alleged are therefore verifiable.

Further, Plaintiff plausibly alleges that the Five Statements are actionable based on their context.  The court must "view the publication as a whole and consider particularly the context in which the statement appears."  *Romaine v. Kallinger*, 537 A.2d 284, 290 (N.J. 1988).  "The context of a statement can affect significantly its fair and natural meaning."  *Lynch*, 735 A.2d at 1137 (citing *Ward*, 643 A.2d at 979–80.  "[W]ords written after time for thought . . . may be taken to express the defamatory charge and to be intended to be taken seriously."  *Ward*, 643 A.2d at 980 (quoting Restatement (Second) of Torts § 566 cmt. e (Am. L. Inst. 1965)).  Further, New Jersey courts have found that online fora can contain defamatory content.  *See Too Much Media, LLC v. Hale*, 993 A.2d 845, 850, 865 (N.J. Super. Ct. App. Div. 2010).  Here, the Five Statements were posted on an online forum, cheatersandbastards.com, a "so-called 'shaming'" website "dedicated to 'reporting' 'cheaters' and 'bastards.'"  (Am. Compl. ¶¶ 14–15 & 18).  Viewing the publication as a whole, the Court finds that the Five Statements fairly express defamatory meaning intended to be taken seriously.  *See Lynch*, 735 A.2d at 1137; *see also Ward*, 643 A.2d at 980.

Finally, Plaintiff plausibly alleges that the Five Statements are actionable based on their content.  *Lynch* provides:

> Evaluation of content involves consideration not merely of a statement's literal meaning, but also of the fair and natural meaning that reasonable people of ordinary intelligence would give to it.  If a statement has more than a literal meaning, the critical consideration is what a reasonable reader would understand the statement to mean.

735 A.2d at 1136–37 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17 (1990) (internal citation omitted)).  As previously noted, the Five Statements indicate that Plaintiff engages in sexual intercourse in exchange for opportunity and that she is a "whore" and "prostitute."  (Am. Compl. ¶ 18).  The fair and natural meaning of each of the Five Statements is reasonably interpreted as injurious to Plaintiff's reputation.  *See Romaine*, 537 A.2d at 287.  Therefore, the Court finds that the Five Statements support a cognizable claim for defamation.

Defendant's reliance on *Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 559 (3d Cir. 2017), is misplaced.  (*See* MTD Mov. Br. at 13).  *Lee* affirmed dismissal of plaintiff's defamation claim against several media outlets on the grounds that those outlets were protected by the fair-report privilege.  710 F. App'x at 559. Unlike the instant case—which involves private individuals—*Lee* involved media outlets reporting statements that the plaintiff was involved in a drug and prostitution ring.  *See id*.  The plaintiff's claims were dismissed because the media outlets were protected by the fair-report privilege, not because of the nature of the allegations.  *Id.* at 559.  Here, no such privilege applies.  Accordingly, *Lee* is inapposite.

Defendant further argues that Plaintiff's claim is not cognizable to the extent that it is based on language that appears in the form of a question rather than a statement of fact.  (MTD Mov. Br. at 14–18.[5]  The Court disagrees.  First, the first statement to which Defendant refers was included in the original complaint, which the Court already determined stated a claim for defamation.  Second, both statements that take the technical form of a question are similar in all other respects

---

[5]     Defendant specifically refers to the following alleged statements:

- "She has no ability to survive in this world without sleeping with men — a cheap prostitute?"

- "this whore moving to the east coast now?"

(*Id.* at 14 & Am. Compl. ¶18).

to the remaining statements in the Amended Complaint in terms of verifiability, content, and context. *See Lynch*, 735 A.2d at 1136.  And the disparaging portion of the statements are "*assertion[s]* of a false *fact*" within a question.  *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993) (emphasis in original).  Contrary to Defendant's argument, they are not "variously interpretable," nor can they "be read to imply the assertion of objective facts."  (*See* MTD Mov. Br. at 15 & 16 (first quoting *Ollman v. Evans*, 750 F.2d 970, 980 (D.C. Cir. 1984); then quoting *Abbas v. Foreign Pol'y Grp., LLC*, 975 F. Supp. 2d 1, 16 (D.D.C. 2013), *aff'd*, 783 F.3d 1328, 1332))).  The Court therefore rejects this argument.

### 2.   Communication to a Third Party

To satisfy the communication element of a defamation claim, the complaint must "plead facts sufficient to identify the defamer and the circumstances of publication."  *Mangan*, 834 F. Supp. 2d at 206 (quoting *Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 767, 563 A.2d 31 (1989)).  "[D]efamation law generally does not distinguish between actionable conduct in print or electronic form."  *Petro-Lubricant*, 184 A.3d at 466.  Defendant does not argue that Plaintiff fails to establish the necessary element of communication to a third party.  Plaintiff alleges that Defendant published and/or conspired to publish the Five Statements online.  (Am. Compl. ¶¶ 16 & 18).  The Court finds that Plaintiff has sufficiently alleged this element.

### 3.   Fault

To satisfy the element of fault, the complaint need only plead that the defendant negligently failed "to ascertain the truth or falsity of the statement before communicating it."  *Feggans v. Billington*, 677 A.2d 771, 775 (N.J. App. Div. 1996); *see also Mangan*, 834 F. Supp. 2d at 206. Here, the sufficiency of pleading fault is not contested.  Plaintiff alleges Defendant knew the Five

Statements were false when she published them and acted negligently in publishing them.  (Am. Compl. ¶¶ 49 & 72).  The Court finds that Plaintiff has sufficiently alleged fault.

*        *        *

Accepting all allegations in the Amended Complaint as true and giving Plaintiff the benefit of every favorable inference, the Court finds that Plaintiff sufficiently states a claim for defamation.

### iii.    Defendant's Constitutional Challenge to Slander *Per Se*

Defendant argues that the doctrine of defamation *per se* is unconstitutional because it grants preferential treatment to women by imposing *per se* liability for statements impugning the chastity of a woman.  (MTD Mov. Br. at 5–8).[6]  Plaintiff argues that Defendant relies on the inapplicable doctrine of slander *per se* and therefore this argument is misplaced.  (D.E. No. 101 at 7–13).  The Court agrees with Plaintiff and need not reach the constitutional question.[7]

By broadly referring to defamation *per se*, Defendant does not appropriately distinguish between libel and slander.  Defamation in written form is libel; in spoken form it is slander.  *W.J.A. v. D.A.*, 43 A.3d 1148, 1153 (N.J. 2012).  Therefore, while Plaintiff refers generally to defamation *per se* in two instances throughout the Amended Complaint (*see* Am. Compl. ¶¶ 4 & 74), her claim is one for libel *per se* because the statements on which her claim is based were written.

That Plaintiff in reality brings a claim for libel *per se* is not a distinction without a difference.  As Defendant points out, the doctrine of slander *per se* provides that statements are

---

[6]     The Court notes that Defendant waited to raise this argument on its motion to dismiss the original complaint until her reply.  (*See* D.E. No. 21 at 14–16).  Therefore, the Court was not inclined to address it at the March 2, 2020 hearing.  (*See* 03.02.20 TR. at 47:6–10).  The Court will address it now.

[7]     "[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."  *Pa. v. DeJoy*, 490 F. Supp. 3d 833, 889–90 (E.D. Pa. 2020) (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)).

slanderous *per se* where they (i) "charge commission of a crime," (ii) "impute certain loathsome diseases," (iii) "affect a person in his business, trade, profession or office," or (iv) "*impute unchastity to a woman.*"  (MTD Mov. Br. at 5–6 (quoting *Hoagburg v. Harrah's Marina Hotel Casino*, 585 F. Supp. 1167, 1170 (D.N.J. 1984)) (emphasis added)).  Meanwhile, as courts have recognized, the doctrine of libel *per se* does not grant preferential treatment to female plaintiffs:

> [T]he critical inquiry under the libel *per se* doctrine is not whether the statements in question fit into one of the four traditional categories of slander *per se*.  Rather, the critical inquiry is whether the statement in question is defamatory on its face and, therefore, actionable without further factual support; or whether the statement requires extrinsic facts to establish its defamatory nature.

*Gillon v. Bernstein*, 218 F. Supp. 3d 285, 302 (D.N.J. 2016); *see also Covington v. Equifax Info. Servs., Inc.*, No. 18-15640, 2020 WL 1921954, at *7 (D.N.J. Apr. 20, 2020) (distinguishing between the doctrines of libel *per se* and slander *per se* under New Jersey law).  Accordingly, impugning the chastity of a woman is not, on its own, sufficient to bring a claim for libel *per se*. *See also Herrmann v. Newark Morning Ledger Co.*, 138 A.2d 61, 73 (N.J. Super. Ct. App. Div. 1958) ("The very basis for the original distinction between written and spoken defamatory words in this respect was the greater capacity for permanent and widespread harm of language which is written or printed."); *compare Sylvan Dental, P.A. v. Chen*, No. A-4544-18, 2021 WL 3671164, at *6 (N.J. Super. Ct. App. Div. Aug. 19, 2021) (noting statements are libelous *per se* where they are "not reasonably susceptible of a nondefamatory interpretation") *with Biondi v. Nassimos*, 692 A.2d 103, n.2 (N.J. Super. Ct. App. Div. 1997) (explaining the distinct four categories of slander *per se*).[8]  For that reason, the Court need not address the constitutionality of a claim that Plaintiff does not bring.

---

[8]    Defendant's argument that slander and libel *per se* are synonymous is misguided.  (D.E. No. 103 at 2–4). The case on which Defendant relies, *Mackay v. CSK Pub'g Co.*, 693 A.2d 546 (N.J. Super. Ct. App. Div. 1997), has

Further, it is not clear that Defendant argues that Plaintiff fails to state a claim for libel *per se*.  (*See* MTD Mov. Br. at 7).[9]  Nonetheless, the Court notes that the critical inquiry for libel *per se* is whether the statements are defamatory on their face.  *See, e.g.*, *Gillon*, 218 F. Supp. 3d at 302.  And "[w]ords that clearly 'sound to the disreputation' of an individual are defamatory on their face."  *Lawrence v. Bauer Pub. & Printing Ltd.*, 446 A.2d 469, 473 (N.J. 1982) (quoting *Shaw v. Bender*, 100 A. 196, 197 (N.J. 1917)).  As previously described, Plaintiff alleges that Defendant published and/or conspired to publish statements that accuse her of engaging in sexual intercourse for opportunity and of being a "prostitute" and "whore."  (Am. Compl. ¶ 18 & 74).  The statements as alleged are defamatory on their face because extrinsic evidence is not necessary to establish that they harm Plaintiff's reputation.  *See Gillon*, 218 F. Supp. 3d at 302; *see also Lawrence*, 446 A.2d at 473.  Nor are they reasonably susceptible to a nondefamatory interpretation.  *See Sylvan Dental*, 2021 WL 3671164, at *6.  Thus, accepting all allegations as true and giving Plaintiff the benefit of every favorable inference, the Court finds that Plaintiff states a claim for libel *per se*.

Accordingly, Defendant's constitutional challenge is not a basis to dismiss the Amended Complaint.

---

been called into question as "a misinterpretation of controlling New Jersey law, which utilizes those categories to determine when slanderous, not libelous, statements require proof of special damages."  *Callaremi Lincoln-Mercury, Inc. v. Picon Auto Grp. LLC*, No. 17-6819, 2018 WL 5342721, at *5 n.9 (D.N.J. Oct. 29, 2018); *see also Gillon*, 218 F. Supp. 3d at 302 ("State and federal case law, on balance, supports a differentiation between the doctrines of libel *per se* and slander *per se*.").

[9]     Under the doctrine of libel *per se*, damages are presumed.  *See Herrmann*, 138 A.2d at 73.

**IV.      CONCLUSION**

For the foregoing reasons, the appeal is **DENIED**, and the motion to dismiss is **DENIED**.

An appropriate Order accompanies this Opinion.

**Dated:** July 1, 2022

*s/Esther Salas*
**Esther Salas, U.S.D.J.**